TEACHERS UNITED FOR FAIR TREATMENT, Kenneth Bobrowsky, Blossom Fogel, Harriet Greenbaum, LaFrances Hills, Alice Lubitch, Mary McAulay, Joseph McCrum, Maurice Mendoza, and Pamela Marland, Plaintiffs,

v.

Irving ANKER, Chancellor of the Board of Education of the City of New York, Isaiah Robinson, President of the Board of Education of the City of New York, and James F. Regan, a Member of the Board of Education of the City of New York, Defendants.

No. 76 C 283.

United States District Court, E. D. New York.

March 8, 1977.

Joan E. Goldberg, New York City, for plaintiffs.

W. Bernard Richland, Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge.

Plaintiffs Teachers United for Fair Treatment (TUFT), an organization of approximately 125 members, and nine individually named teachers brought this action to enjoin enforcement of certain sections of the Education Law of the State of New York and certain procedures promulgated thereunder by the defendants, on the grounds that they are unconstitutional either on their face or as applied, and to obtain damages for injuries suffered by the plaintiffs for violation of their individual rights as a result of these statutes and procedures. For the reasons discussed below, defendants' motion for summary judgment argued October 29, 1976 is granted.

## I

Since TUFT lacks standing to maintain this lawsuit, summary judgment should be entered against this plaintiff. As the Supreme Court has recently noted:

In *Warth v. Seldin,* 422 U.S. 490, [95 S.Ct. 2197, 45 L.Ed.2d 343] (1975) * * * we reviewed the constitutional limitations and prudential considerations that guide a court in determining a party's standing * * *. The essence of the standing question, in its constitutional dimension, "is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.,* at 498–99, 95 S.Ct. at 2205, quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The plaintiff must show that he himself is injured by the challenged action of the defendant. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977).

In the instant case, plaintiff TUFT has failed to establish that, as an organization, it has suffered a judicially cognizable injury sufficient to confer standing.

Assuming *arguendo* that each of the nine individual plaintiffs, members of TUFT, have judicially cognizable claims, they are clearly capable of asserting their own diverse claims and have in fact done so. There is no indication that other members of TUFT are incapable of asserting any of their own claims. Moreover, these individuals could not have their separate claims adjudicated without participating as plaintiffs in a lawsuit. *Compare NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), *with Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) *and Independent Investor Protection League v. Saunders,* 64 F.R.D. 564 (E.D.Pa.1974). In sum, when the nature of the claims and of the relief sought make the individual participation of each injured party indispensible to the proper resolution of the case, and when the association advances no separately cognizable claim on its own behalf, an association may not properly represent each of the separate and distinct interests. *Warth v. Seldin, supra,* 422 U.S. at 511, 516–17, 95 S.Ct. 2197.

## II

Plaintiff Kenneth Bobrowsky, a tenured teacher at Bronx High School of Science, seeks redress for the receipt of an "unsatisfactory" rating from his principal in 1973. Alleging a deprivation of his liberty and property interests and relying upon *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), Bobrowsky claims that the administrative review conducted under section 105a of the By-Laws of the Board of Education of the City of New York (By-Laws) which sustained the "unsatisfactory" rating failed to comport with certain due process requirements, including representation by counsel and an evidentiary hearing.

■ While recognizing that liberty and property constitute protected interests, *Board of Regents v. Roth, supra,* also recognized that "the range of interests protected by due process is not infinite." *Id.,* 408 U.S. at 570, 92 S.Ct. at 2705. And, in commenting upon *Roth* and its companion case *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Second Circuit has observed that:

[These] cases teach that when either a deprivation of a property interest such as in a permanent job, or a deprivation of liberty, such as a stigma that operates to foreclose other employment opportunities, *result from the decision to discharge,* due process requires that notice of the charges and a hearing must be granted to the dischargee. *Velger v. Cawley,* 525 F.2d 334, 336 (C.A.2 1975), *rev'd on other grounds sub nom. Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 50 L.Ed.2d 92 (1977) (emphasis added).

*Accord, Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Simply put, absent termination of that employment, an "interest"

in employment does not rise to the level of a property or liberty right constitutionally protected by procedural due process.

■ Plaintiff here had no claim of entitlement to a "satisfactory" rating; nor was he discharged for receipt of an "unsatisfactory" rating. Moreover, New York's CPLR § 7801 afforded plaintiff recourse from an arbitrary and administrative determination sustaining the rating. Since "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies," *Bishop v. Wood, supra,* 96 S.Ct. at 2080, and the actions taken by the defendants in sustaining the "unsatisfactory" rating do not involve any protected constitutional rights, summary judgment should be entered against plaintiff Kenneth Bobrowsky.

### III

■ In October 1972 charges were preferred against plaintiff Blossom Fogel and her removal was sought for conduct unbecoming her position and conduct prejudicial to the good order, efficiency, and discipline of the service. Soon thereafter the charges were amplified by numerous specifications. After a hearing conducted pursuant to By-Law § 105, the trial examiner dismissed certain charges, found her guilty of others, and recommended dismissal. On June 28, 1973 the Board of Education (board) concurred in these findings, but modified the recommendation to permit plaintiff the option of resigning to secure any accrued pension rights—an option which she refused.

On November 12, 1973, plaintiff Fogel commenced a proceeding in the state courts seeking to overturn her dismissal on evidentiary and constitutional grounds. Specifically, plaintiff briefed and argued that the hearing procedure denied her due process of law in that she was given improper notice of the charges, was refused a copy of the trial examiner's report, and denied an opportunity to comment thereupon. By decision rendered June 30, 1975, the Appellate Division, Second Department, remanded the · matter to the board stating:

Under the circumstances of this case, petitioner, having requested to see the Trial Examiner's report prior to a decision by [the] respondent, should have been given the opportunity to controvert the findings which are the subject of review. (*Matter of Sorrentino v. State Liq. Auth.,* 10 N.Y.2d [143, 218 N.Y.S.2d 635, 176 N.E.2d 563]). We have considered the other contentions raised by petitioner and find them to be without merit. *In re Fogel v. Board of Educ.,* 48 A.D.2d 925, 369 N.Y.S.2d 517 (1975).

The board subsequently made the report available to the plaintiff who then submitted a written response and, with counsel, addressed the board on January 21, 1976. Nonetheless, on that same day, the board adopted a resolution reaffirming the original decision to dismiss the plaintiff. On March 4, 1976, plaintiff initiated an appeal before the New York State Commissioner of Education, who, on February 25, 1977, sustained the board's resolution and dismissed the appeal.

In the instant case, plaintiff Fogel once again challenges the constitutionality of the board's hearing procedures in that they failed to give adequate notice of the charges and failed to authorize the teacher to receive and respond to the findings of the trial examiner. Not only is the latter claim moot, but the former is barred by the *res judicata* effect of the Appellate Division decision. *See Thistlewaite v. City of New York,* 497 F.2d 339 (C.A.2 1974), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1975); *Taylor v. New York City Transit Authority,* 433 F.2d 665 (C.A.2 1970). Neither *Lombard v. Board of Educ.,* 502 F.2d 631 (C.A.2 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975) nor *Newman v. Board of Educ.,* 508 F.2d 277 (C.A.2), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975), can be profitably cited to the contrary where, as here, the constitutional claims were clearly and specifically raised, elaborated upon, and decided in the state court proceedings. To hold otherwise would be to give this plaintiff "two bites at the cherry." *Lombard v.*

*Board of Educ., supra,* 502 F.2d at 636. *See also* VIII, *infra.*

Accordingly, summary judgment should be entered against plaintiff Blossom Fogel.

## IV

■ Plaintiff Harriet Greenbaum, a tenured teacher of library at Erasmus High School, was suspended with pay on the basis of charges preferred against her. Plaintiff concedes that a hearing on these charges, as amplified by the specifications, is now in progress and that the board has not to date made a final determination in the matter. Since the due process protections afforded a disciplined teacher by the board's hearing procedures are not unconstitutional on their face, *see* VIII, *infra,* and a court will not, in the absence of unusual circumstances, not present here, interfere with a pending administrative matter in which there has been no final determination, *Safir v. Gibson,* 432 F.2d 137 (C.A.2), *cert. denied,* 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970), plaintiff Greenbaum has failed to state a claim upon which relief may be granted.

■ Nor can plaintiff's claimed deprivation of a liberty interest resulting from an "unsatisfactory" rating in 1973 be sustained. The rating was subsequently reversed by the State Commissioner of Education on procedural grounds; any conceivable stigma resulting from the rating did not arise in the context of termination of employment; and, if this 1973 rating forms the basis for any part of the charges now pending before the board, redress is available at the hearing. In sum, plaintiff has not been deprived of a liberty interest without due process of law. *See Board of Regents v. Roth, supra; Bishop v. Wood, supra; Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 50 L.Ed.2d 92 (1977); II, *supra.*

Accordingly, defendants' motion for summary judgment addressed to the complaint of plaintiff Harriet Greenbaum is granted.

## V

Plaintiff LaFrances Hills, a probationary teacher serving in Brooklyn's P.S. 21, was requested by her principal on May 30, 1972 to undergo a medical examination at the Medical Bureau of the Board of Education pursuant to New York Education Law § 2568. On June 9, 1972 plaintiff was examined by two physicians of the board who referred plaintiff for a panel psychiatric examination. After cancelling a June appointment, plaintiff met with a panel psychiatrist on August 9, 1972. As a result of these medical and psychiatric examinations, plaintiff was found unfit for teaching duties and placed on involuntary medical leave commencing September 1972 until February 1, 1973.

Pursuant to the then-existing collective bargaining agreement between the Board of Education and the plaintiff's union, on September 29, 1972 Ms. Hills requested an evaluation by an "ad hoc committee" of physicians, consisting of one physician selected by Ms. Hills, one by the board, and a third selected by the other two physicians. After two letters from the board requesting that plaintiff supply the name of her physician, on October 24, 1972 plaintiff, by her attorney, again requested formation of an ad hoc committee and provided the name of a physician. On that same day, however, plaintiff informed the board that she was medically unfit to appear before the ad hoc committee (not as yet formed) and requested additional time. Defendants' Rule 9(g) Statement re: Plaintiff LaFrances Hills, Exhibit G.

No further action was taken until May 1, 1973 when plaintiff appeared at the board's Medical Bureau and declared that she wanted to resume teaching. Plaintiff was again examined by the board's physician on May 9, 1973 and again referred to a panel psychiatrist, but plaintiff repeatedly cancelled the scheduled appointments. Plaintiff's leave of absence for health reasons was continued to February 1, 1974; and, after two more examinations held five months apart, the health leave was extended to June 30, 1975. Plaintiff never requested further examinations or further board action after this date.

■ Plaintiff alleges that she has been denied her liberty interest in employment without due process of law since she was stigmatized by the determination that she was declared medically unfit to continue teaching. Plaintiff's bare allegation, however, fails to state a claim for which relief can be granted.

As the Supreme Court has recently explained:

[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely "to provide the person an opportunity to clear his name." * * * Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required. *Roth, supra; Bishop, supra. Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884 (1977).

In the instant case, since plaintiff was neither terminated from her employment nor denied reinstatement when found medically fit, it is not at all clear whether a cognizable liberty interest has been affected in the absence of an adverse effect on future employment. See *id.; Board of Regents v. Roth, supra; Bishop v. Wood, supra.* Secondly, plaintiff has failed to allege a stigma arising from the alleged deprivation of due process. The files containing the allegedly stigmatizing medical evaluations have not been shown to, nor are they available to, prospective employers. Indeed, there is no allegation that plaintiff has sought, let alone been deprived of, alternative employment because of the stigmatizing matter in the files. Moreover, plaintiff's file contains letters from her own physician and herself corroborating, at least in part, the medical evaluations. *Cf. Codd v. Velger, supra* (absence of allegation of falsity of "stigmatizing" report fatal to complaint).

Finally, although plaintiff complains of a denial of due process, she herself has failed to avail herself of the remedies opened to one declared medically unfit. She failed to pursue reexamination and review by the ad hoc committee—the very first step in the due process machinery available to a teacher seeking to reverse such a finding.

Accordingly, defendants' motion for summary judgment addressed to the complaint of plaintiff LaFrances Hills is granted since plaintiff has failed to state a claim upon which relief may be granted.

## VI

■ Plaintiff Alice Lubitch avers in the complaint that:

Plaintiff Alice Lubitch is a duly licensed, fully tenured physical education teacher at Martin Van Buren High School in Queens with more than 13 years experience. She was physically injured when she was hit by a volleyball during the course of her employment. Defendants denied her disability without a hearing and without even a physical examination. Her own doctor's letters have been ignored and his findings have been disapproved and she was found physically fit although she is unable to work at the present time. After this finding, she returned to work December, 1974, but was unable to work on a regular basis. She was ordered to report for a medical examination and has been found "apparently unfit". Yet, the Board in lieu of paying her disability has put her on leave of absence without pay!!

Plaintiff had no right to a hearing, no right to present witnesses, and no indication that her physician's letters were evaluated.

The only "right" she has by regulation is to take a leave of absence without pay which requires her to relinquish her seniority rights.

By virtue of the rules and regulations of the Board of Education, plaintiff has been denied the right to be compensated for her injury without due process of law. Complaint paragraphs 37–40.

In April 1974 and again in April 1975 plaintiff made virtually identical allegations in Kings County Supreme Court actions. Defendants' Rule 9(g) Statement re: Plaintiff Alice Lubitch, Exhibits A, J,

briefed the constitutional issues concerning due process, *id.,* Exhibits D, E, I, and received the following adjudications:

Petitioner strains to interject a due process issue in this proceeding but the court finds no such issue involved. Respondents followed the statute which sufficiently satisfied the due process requirements of the constitution. Petitioner received all proper notices; she was permitted to introduce her own medical proof to support her position. Contrary to petitioner's assertions, she was given copies of respondents' medical reports to assist her in her presentation.

The only real issue in controversy is the conflicting medical opinions of the parties. However, the mere existence of a medical difference of opinion does not warrant a finding that respondents were acting arbitrarily (*Matter of Strauss v. Hannig,* 256 Appellate Division 662 [11 N.Y.S.2d 102], affd. 281 N.Y. 612 [22 N.E.2d 174]; *Matter of Albury v. New York City Civil Service Commission,* 32 A.D.2d 895 [302 N.Y.S.2d 3].) Moreover, the findings of respondents were based on credible evidence and there is a rational basis for respondents' determination and, under these circumstances, the court will not substitute its judgment for that of the administrative agency. The actions of respondents were neither arbitrary nor illegal (*McCabe v. Hoberman,* 33 A.D.2d 547, [304 N.Y.S.2d 497]).

Accordingly, petition is dismissed in all respects.

Settle order on notice. *In re Alice Lubitch v. Board of Educ. of the City of New York and Teachers Retirement System of the City of New York,* Index No. 5844/74 (Sup.Ct., Kings County, Special Term I, Oct. 25, 1974).

In this Article 78 proceeding petitioner purportedly challenges respondent's placing petitioner on leave without pay for restoration of health.

If petitioner truly seeks to challenge respondent's ruling she need merely report for work and maintain a normal work schedule. It is of no matter to either party if petitioner be deemed fit or unfit for duty. The pivotal issue is whether petitioner's condition, whatever it is, is medically related to her previous duties. Respondent's contention that such condition is not related was upheld by Judge Schwartzwald who dismissed an earlier Article 78 proceeding for the same relief. In reality, petitioner seeks to relitigate that earlier proceeding and this she cannot do; res judicata bars her path (*Friedman v. State of New York,* 24 N.Y.2d 528, 535, [301 N.Y.S.2d 484, 249 N.E.2d 369]).

Accordingly, the petition is dismissed. Settle order. *In re Alice Lubitch v. Board of Educ.,* Index No. 9164/75 (Sup. Ct., Kings County, Special Term I, Aug. 6, 1975).

Plaintiff filed a notice of appeal from each decision.

It is clear that plaintiff did more than merely mention "due process" in the state court litigation and defendants are correct in concluding that:

Even under the most liberal and expansive interpretation of *Lombard* [*v. New York City Transit Authority, supra,*] and *Newman* [*v. Board of Educ., supra,*] the claims of plaintiff Lubitch are barred as they were fully raised in the previous state proceedings. They are "elaborated" upon in every paper filed by plaintiff in those proceedings by or on behalf of Lubitch. The memorandum submitted by plaintiff's counsel are replete with "citations of authority" and further elaboration. Finally the appeal statement cites a denial of due process as the basis for appeal. The claims are indistinguishable. Defendants' Memorandum of Law at 11.

"Thus, while it is clearly a federal policy to allow every plaintiff with a colorable claim his day in court, it is equally clearly not a court's duty to encourage career litigants by allowing federal duplication of state trials," and Lubitch's claim must be barred by *res judicata. Thistlewaite v. City of New York, supra. Accord, Brown v. DeLayo,* 498 F.2d 1173 (C.A.10 1974); *Montagna v. O'Hagan,* 402 F.Supp. 178 (E.D.N.Y.1975). Moreover, even if *res judicata* did not bar

plaintiff's claim summary judgment in favor of the defendants would be appropriate. *See Siletti v. New York City Employee's Retirement System,* 401 F.Supp. 162, 167–68 (S.D.N.Y.1975). Accordingly, defendants' motion for judgment on the Lubitch claim is granted.

## VII

Plaintiff Mary McAulay seeks damages as well as declaratory and injunctive relief stemming from her claims that she was stigmatized as a result of "unsatisfactory" ratings received in 1971 and 1973 and that she was "illegally" transferred from one school to another. Turning first to the alleged involuntary transfer, it is unclear from the complaint whether this plaintiff is referring to a transfer form Seward Park High School to Washington Irving High School in 1971 or from Seward Park to John F. Kennedy High School in 1973. In either event, however, plaintiff has failed to state a claim upon which relief can be granted.

While it is true that in 1971 plaintiff McAulay was ordered to transfer, the state courts stayed the order and the transfer never occurred. *McAulay v. Board of Educ.,* 46 A.D.2d 84, 361 N.Y.S.2d 5 (1st Dep't 1974). Moreover, any residual claim which may arise from the attempted transfer is now barred by the statute of limitations. *Kaiser v. Cahn,* 510 F.2d 282 (C.A.2 1974); *Swan v. Board of Higher Educ.,* 319 F.2d 56 (C.A.2 1963). In addition, plaintiff's transfer in 1973 was not "involuntary" since it was one for which she herself applied. Defendants' 9(g) Statement re: Plaintiff McAulay, Exhibit A.

Plaintiff's grievance concerning the "unsatisfactory" ratings also fails to state a claim upon which relief can be granted. As with plaintiff Bobrowsky, *see* II, *supra,* McAulay did not suffer a deprivation of liberty or property without due process of law since she was not terminated from her teaching position. *See Board of Regents v. Roth, supra; Bishop v. Wood, supra; Paul v. Davis, supra.* In addition, not only were both "unsatisfactory" ratings reversed in subsequent proceedings, but the possibility that one of the ratings has not been formally removed from her official records does not rise to the level of a constitutional deprivation sufficient to invoke the jurisdiction of this court.

Accordingly, defendants' motion for summary judgment addressed to the complaint of plaintiff Mary McAulay is granted.

## VIII

On February 8, 1974 plaintiff Joseph McCrum, a tenured teacher at Lafayette High School, was charged with incompetent and inefficient service and suspended with pay. In April, 1974, plaintiff was notified that a hearing on the charges was scheduled for June 3, 1974 and was given a copy of the specifications of the charges against him. Pursuant to New York Education Law § 2573–7 and § 105 of the By-Laws, a hearing on the charges and specifications was conducted before a trial examiner, with plaintiff represented by counsel, allowed to present and cross-examine witnesses, and permitted to submit all relevant and material evidence in his defense.

At the conclusion of the hearing, the trial examiner recommended that the charges made against plaintiff be sustained and that plaintiff be removed as a teacher. Although on January 22, 1975 the board adopted the recommendations of the trial examiner and ordered plaintiff discharged, the board annulled this resolution in the face of *Fogel v. Board of Educ., supra,* which required that, upon request, the report and recommendations of the trial examiner be made available for comment and written response by the teacher. The plaintiff thereafter responded to the findings and recommendations of the trial examiner and, after reviewing all the evidence before it and the plaintiff's response, the board adopted the recommendations of the examiner and, by resolution dated March 24, 1976, ordered plaintiff dismissed from service.

Although the Second Circuit has already commented that "New York is quite protective of the rights of tenured teachers and

supervisors", *Fuentes v. Roher*, 519 F.2d 379, 383 (C.A.2d 1975), plaintiff nonetheless challenges the hearing procedures as violative of due process. The 11 alleged defects in the hearing procedure listed by plaintiff in the complaint, however, are meritless.

■ The charges, as amplified by the specifications, are more than adequate to advise the plaintiff of the nature of the accusations. *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1973) (upholding "for such cause as will promote the efficiency of the service" charge). The claims that the disciplined teacher did not receive the recommendations of the hearing officer or was not given an opportunity to respond are frivolous in that plaintiff was given and responded to the report. Similarly lacking in substance are the claims that the board failed to set forth the basis for the decision (they specifically adopted the trial examiner's report), that charges need not be supported by substantial evidence (trial examiner found charges supported by preponderance of the evidence), and that there is no indication that the evidence is considered by the board (the resolution recited review of the evidence).

■ Plaintiff's remaining challenges concerning the impartiality of the trial examiner are equally unpersuasive. As with the late Hon. Francis E. Rivers in the instant case, trial examiners are generally former judges and hold no other position with the board. Even the combination of investigative and adjudicative functions, which is not present herein, does not, without more, create an unconstitutional risk of bias. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Moreover, hearing officers "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *Id.* at 47–48, 55, 95 S.Ct. at 1468 *citing United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). The fact that a hearing officer is paid by the board does not in and of itself constitute bias, *see Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and, in the absence of any specific allegations to the contrary, or even a minimal showing of specific prejudice, merely conclusory charges levelled at a presumed impartiality of a trial examiner are legally insufficient to support a claim of deprivation of due process. *See Withrow v. Larkin, supra; Fuentes v. Roher, supra; Lopez v. Henry Phipp Plaza South, Inc.*, 498 F.2d 937, 944 (C.A.2 1974).

Accordingly, defendants' motion for summary judgment addressed to plaintiff Joseph McCrum's challenge to his dismissal in accordance with the board's policies and procedures is granted.

## IX

In April 1971 plaintiff Maurice Mendoza began service as a bilingual professional assistant pending the results of the physical and medical examinations required of all applicants for a teaching position with the board and authorized by New York Education Law § 2569. In April 1972 plaintiff underwent his medical and physical exams; however, on September 5, 1972, the Committee on Medical Examination agreed with the recommendation of the Medical Division that plaintiff was medically and psychologically "not fit" for service. Plaintiff was then notified that his application for a certificate of competency had been denied and his services were terminated as of December 31, 1972.

Although plaintiff's complaint advances both a claim for a denial of a liberty interest without due process and a claim for racial discrimination in employment, he concedes in his memorandum of law dated November 15, 1976, page 25, that the discrimination claim, now pending in another action in this court, is not at issue here. Turning, then, to the alleged deprivation of a liberty interest resulting from being found "unfit" for service, plaintiff's claim, if any, is barred by the statute of limitations.

■ The acts complained of by plaintiff Mendoza, including his dismissal as well as the medical examination itself, all occurred on or before December 31, 1972. Since the

instant complaint was filed on or about February 16, 1976, the applicable three-year statute of limitations precludes litigation of the claim. *Meyer v. Frank*, 550 F.2d 726 (C.A.2 1977); *Ortiz v. LaVallee*, 442 F.2d 912 (C.A.2 1971). Accordingly, defendants' motion for summary judgment addressed to the claims of plaintiff Maurice Mendoza is granted.

## X

Plaintiff Pamela Marland, a tenured teacher at Seward Park High School, was rated "unsatisfactory" by her principal in 1973. Although plaintiff's administrative appeal of the rating was unsuccessful, the rating was subsequently reversed by the courts on procedural grounds. *In re Pamela Marland v. Board of Educ.*, Index No. 17060–1974 (Supreme Court, N.Y. County, Special Term I, June 20, 1975).

█ Since she is presently employed as a tenured teacher, she cannot, as already discussed, be heard to complain that an "unsatisfactory" rating received by her in 1973 and reversed in 1975 denied her a liberty or property interest without due process of law. *Board of Regents v. Roth, supra; Bishop v. Wood, supra; Paul v. Davis, supra.* Accordingly, summary judgment should be entered against the claim of plaintiff Pamela Marland.

## XI

In addition to the specific, more concrete allegations of the complaint adjudicated above, each plaintiff also makes general, conclusory, and sometimes inconsistent allegations—e. g., first amendment claims based on the "retaliatory" motives behind an "unsatisfactory" rating; racial discrimination perpetrated against plaintiff Mendoza (despite the concession in the memorandum of law, *see* IX, *supra*); and elements of sex discrimination behind the allegations of the female plaintiffs. Despite the court's request at oral argument that the plaintiffs refine and document their allegations, the supplemental memorandum of law received in no way elucidated these conclusory charges and, in many instances,

these issues were not even addressed. Despite the concern for protecting a plaintiff's constitutional rights, the courts in this circuit have not been reluctant to dismiss actions where there is an insufficient factual basis on which to predicate relief. *See, e. g., Buck v. Board of Elections*, 553 F.2d 315 (C.A.2 1976); *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck*, 463 F.2d 620 (C.A.2 1972); *Powell v. Workmen's Compensation Board*, 327 F.2d 131 (C.A.2 1964).

Plaintiffs having failed to provide a factual basis sufficient to support these diffuse claims asserted against the defendants, coupled with the infirmities in the complaint discussed in I through X above, defendants' motion for summary judgment is granted and the complaint is dismissed in its entirety.

SO ORDERED.